IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| BARTON-COTTON, INCORPORATED, *et al.*, (n/k/a XBC, Incorporated), *et al.*, | * | Case Number:  09-12066-JS |
| | * | Chapter 7 |
| Debtors. | | |
| | * | (Jointly Administered)[1] |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MOTION OF CHAPTER 7 TRUSTEE PURSUANT TO SECTIONS 105(a)
AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES
6004 AND 6006 FOR AN ORDER (I) AUTHORIZING THE SALE OF
REAL PROPERTY PURSUANT TO REAL ESTATE PURCHASE
AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS AND
ENCUMBRANCES AND OTHER INTERESTS, (II) APPROVING LEASE
ASSIGNMENT UNDER CERTAIN CONDITIONS AT ELECTION OF
PURCHASER AND (III) APPROVING BID PROCEDURES AND SALE
PURSUANT TO ALTERNATIVE QUALIFIED BID WITHOUT
FURTHER COURT ORDER**

Mark J. Friedman, the Chapter 7 trustee for the Barton-Cotton Cases (the "Trustee"), for

substantial and justified reasons as set forth herein, pursuant to Sections 105(a) and 363 of the

Bankruptcy Code and Bankruptcy Rules 6004 and 6006, seeks entry of an order submitted

herewith (the "Sale Approval Order") approving the Motion of Chapter 7 Trustee Pursuant to

Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for an

Order (i) Authorizing the Sale of Real Property Pursuant to Real Estate Purchase Agreement

Free

---

[1] The bankruptcy cases jointly administered with the above-captioned debtor are Barton-Cotton Holding Corporation (n/k/a XBC Holding Corporation), Barton-Cotton Sales Corporation (n/k/a XBC Sales Corporation), and Barton-Cotton Real Estate, Inc. (collectively the "Barton-Cotton Cases").

and Clear of Liens, Claims and Encumbrances and Other Interests, (ii) Approving Lease Assignment Under Certain Conditions at Election of Purchaser and (iii) Approving Bid Procedures and Sale Pursuant to Alternative Qualified Bid Without Further Court Order (the "Motion") to permit the Trustee to consummate a sale of real property known as 1301 Constance Avenue located in Baltimore County, Maryland (the "Real Property") owned by Barton-Cotton Real Estate, Inc. ("BCRE").

Pursuant to transactions approved by this Court (Dkt. No. 148), the Real Property is leased (the "Lease") to Barton-Cotton Printing Services, LLC ("Tenant") as successor to B-C Acquisition Group, LLC ("Asset Purchaser"). The Asset Purchaser had purchased all of the operating assets of the Debtors.

The proposed transaction provides either that the Lease be assigned without any further liability to Tenant from the Trustee or the bankruptcy estates of the Debtors or, in the event the Lease is not assigned, the Trustee shall terminate the Lease in accordance with its terms.

In support, the Trustee states as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157 (b).

2. The Barton-Cotton Cases were commenced by voluntary petitions filed under Chapter 7 of the United States Bankruptcy Code on February 9, 2009 (the "Petition Date").

3. On February 9, 2009, Mark J. Friedman qualified and was duly appointed Chapter 7 Trustee.

**Background**

4.    As of the Petition Date, the primary operating debtor, then Barton-Cotton, Inc.,

("Barton-Cotton") through its Fundraising Business was a leading provider of customized direct

marketing fundraising services to North American non-profit organizations, including affinity

groups, religious organizations and memberships, and social services organizations.    Barton-

Cotton also operated a separate internal division known as the Affinity Division that marketed

specialized branded holiday cards via direct mail and on-line channels.    A third internal division,

the RPS Division, sold stationery products, including Holy Cards and Mass cards via catalogue

and on-line channels to Catholic parishes, churches and other religious organizations.

5.    Barton-Cotton operated from four locations.    The administration, sales and art

work related functions were located in leased space in Columbia, Maryland.    The product

produced in-house by Barton-Cotton was processed in its plant located on Parker Road in

Halethorpe, Baltimore County, Maryland (the "Parker Road Location").    The Fundraising

Business also utilized leased warehouse space on Trident Court in Baltimore County, Maryland

to store its inventory related to in-process and upcoming client contracts.    The RPS and Affinity

Divisions utilized warehouse space located at the Real Property to store their stock.    In addition,

certain imprinting machinery used by the RPS Division to personalize its products for the

religious organizations was located at the Real Property.

6.    BCRE owns the Parker Road Location and the Real Property.

7.    As of the Petition Date, the operations of Barton-Cotton were financed by Bank

of Montreal, as administrative agent ("Agent"), for certain lenders to Barton-Cotton (Agent

together with such lenders, collectively, the "Prepetition Lender Group").    The Prepetition

Lender Group held a perfected blanket security interest in substantially all of Barton-Cotton's

- 3 -

assets, including machinery and equipment, receivables, work-in-process and inventory to secure payment of asserted remaining indebtedness then in the approximate amount of $27 million. The Prepetition Lender Group also holds a deed of trust on the Parker Road Location and the Real Property to secure payment of the remaining indebtedness.

8.  In connection with the sale of the operating assets to Asset Purchaser, the Trustee entered into the Lease of the Real Property and a second lease for the Parker Road Location to Tenant.

9.  Tenant has indicated a desire to purchase the Parker Road Location. Tenant does not wish to purchase the Real Property. The Lease of the Property expires on April 30, 2010 except the Trustee or any assignee as the landlord under the Lease has the right for any reason to terminate the Lease at any time subject to sixty (60) days' prior written notice of such termination.

### Sale Effort Concerning the Real Property

10. The Trustee applied for and obtained from this Court authorization to retain Preston Partners, Inc. ("Preston") as listing agent on behalf of the Trustee in connection with the marketing and sale of the Real Property (Dkt. No. 274).

11. In conjunction therewith, Preston initiated a marketing program for the Real Property and sought to elicit interest from prospective purchasers. Several parties expressed interest to Preston and either inspected the Real Property or pursued discussions with Preston.

12. Ultimately, Olson Wire Products Co., Inc. ("Olson") offered to purchase the Real Property at a purchase price and on terms and conditions that the Trustee has deemed acceptable upon the recommendation of Preston and with no opposition asserted by the Prepetition Lender Group. Accordingly, Olson and the Trustee executed a term sheet  which contained general

- 4 -

terms and conditions for a transaction that have been incorporated into the Real Estate Purchase

Agreement (the "Agreement") attached hereto as Exhibit 1 for which the Trustee seeks approval.

### The Real Estate Purchase Agreement

13. The Agreement provides that Olson will acquire the Real Property on an "as is,

where is" basis and without any representation or warranty on the part of the Trustee except as

expressly set forth therein, free and clear of all liens, claims, encumbrances and other interests to

the maximum extent permitted by Section 363 of the Bankruptcy Code for the purchase price of

One Million Five Hundred Seventy-Five Thousand Dollars ($1,575,000) (the "Purchase Price").

As provided in the Agreement, the essential terms and conditions are as follows: [2]

> (i)     Olson has deposited $50,000 with Trustee (the "Deposit").  The Deposit is to be refunded within three business days after request by Olson in the event that:
>
> > (a)     Olson terminates the Agreement on or before the expiration of the Study Period in accordance with the terms of the Agreement;
> >
> > (b)     the Bankruptcy Court fails to approve the Agreement; or
> >
> > (c)     Olson has not breached the Agreement and a sale of the Real Property to the party submitting the Alternative Qualified Bid that the Trustee determined to be the "highest and best" bid has closed.
>
> (ii)    Olson shall have 35 days (the "Study Period") from the entry of the Sale Approval Order to conduct studies of the Real Property including but not limited to an environmental study and an appraisal.  Olson shall have the right to (a) terminate the Agreement on or before the expiration of the Study Period if Olson determines, in its sole discretion that the Real Property is not suitable to Olson, whereupon Olson shall be entitled to receive a refund of its Deposit, or (b) elect to waive the remainder of the Study Period and proceed to Closing.

---

[2] This summary is qualified in its entirety by reference to the Agreement that is attached hereto as Exhibit 1.  All capitalized terms shall have the meanings set forth in the Agreement.

EAST\42604740.3
000200-014417

(iii)    The Trustee and Olson shall equally split all transfer and recordation fees.

(iv)    Closing shall occur within 30 days following the waiver or conclusion of the Study Period and Olson's election to proceed to closing. Subject to entry of the Sale Approval Order, the Trustee shall proceed to close unless the Trustee has received a "higher and better" Alternative Qualified Bid.

(v)     At least ten (10) days prior to the Closing Date, Olson shall notify the Trustee of its election to assume the Lease or not to assume the Lease. If Olson does not elect to assume the Lease, then nonetheless Olson agrees that Tenant may remain as tenant on the Real Property for the lesser of (a) sixty (60) days or (b) through April 30, 2010. All rent under the Lease accruing for the period after closing shall be due to Olson.

(vi)    Other parties shall have the right to submit a proposed "higher and better" offer (an "Alternative Qualified Bid") to the Trustee for a period that expires 5 days after the expiration or termination of the Study Period (the "Alternative Bid Deadline"). Olson or the party submitting the highest Alternative Qualified Bid, shall be referred to herein as the "Purchaser." The Trustee shall give notice of such expiration or termination of the Study Period and of the Alternative Bid Deadline to all parties that have expressed an interest to Trustee or Preston in the Real Property and to the Prepetition Lender Group, inviting such parties to submit "higher and better" offers to the Trustee for the purchase of the Real Property.

(vii)   In order to submit an Alternative Qualified Bid by the Alternative Bid Deadline, a party must:

    (a)    deliver to the Trustee an executed original of the Agreement with no material change or modification (except that the Breakup Fee and the Study Period apply solely to Olson);

    (b)    deliver to the Trustee the Deposit (to be returned to such party no later than 5 business days after the Trustee has accepted another bid);

    (c)    provide to the Trustee adequate financial information for the Trustee to determine in consultation with the Prepetition Lender Group, whether the party is ready, willing and able to close including evidence of creditworthiness, a loan commitment or other certification of readily available funds;

    (d)    offer a cash purchase price:

        (i)    in an amount not less than $1,685,000, in the event Olson has not terminated its obligation to purchase the Real

- 6 -

Property in accordance with the terms of the Agreement; and

(ii) in an amount not less than the Purchase Price in the event Olson has terminated or breached the Agreement and is no longer obligated or no longer intends to close; and

(e) agree to close within 5 business days after acceptance of such Alternative Qualified Bid by the Trustee.

(viii) If Olson has not terminated its obligation to purchase the Real Property pursuant to the Agreement and the Trustee has received an Alternative Qualified Bid from another party:

(a) the Trustee upon 2 days' notice, and within five (5) days following the expiration of the Alternative Qualified Bid Deadline shall conduct an auction among only Olson and those parties that have submitted Alternative Qualified Bids;

(b) Olson shall be allowed to credit bid in an amount equivalent to $100,000 for all bidding (the "Breakup Fee");

(c) each successive bid must be in an increment of $10,000;

(d) the auction process shall continue until the highest bid has been received and the Trustee has made a determination as to the "highest and best" offer that the Trustee in consultation with the Prepetition Lender Group is prepared to accept for closing; and

(e) if Olson has not submitted the bid accepted by the Trustee as the "highest and best" offer, then promptly following the closing of the sale of the Real Property to the Purchaser with the winning Alternative Qualified Bid, Olson shall be entitled to receive the Breakup Fee.

(ix) If Olson has terminated or breached the Agreement and is no longer obligated, or no longer intends to close:

(a) the Trustee upon 2 days' notice, and within five (5) days following the expiration of the Alternative Qualified Bid Deadline shall conduct an auction among only those parties that have submitted Alternative Qualified Bids;

(b) each successive bid must be in an increment of $10,000; and

(c)    the auction process shall continue until the highest bid has been received and the Trustee, in consultation with the Prepetition Lender Group, has made a determination as to the "highest and best" offer that the Trustee is prepared to accept for closing.

(x)    The Prepetition Lender Group reserves the right to credit bid consistent with Section 363(k) of the Bankruptcy Code, and shall be entitled to participate in any auction conducted by the Trustee.

14. The Trustee has determined that the offer from Olson as set forth in the Agreement is the highest and best offer now immediately available for the Real Property. In order to induce Olson to commit to the Agreement and to provide for the prospect of alternative bids, is it is appropriate and reasonable to provide the Breakup Fee to Olson in the event other parties desire to make purchase offers that the Trustee in consultation with the Prepetition Lender Group may consider to be higher and better than the Purchase Price.

15. Moreover, in light of the length of time for Olson to conduct its Study Period after the entry of the Sale Approval Order and the arrangements that provide for the prospect of alternative higher and better and bids, it is appropriate and reasonable to permit the Trustee to accept and close on such an Alternative Qualified Bid without requiring further Bankruptcy Court order or further delay.

**Grounds for the Relief Requested**

16. In respect of the lien on the Real Property in favor of the Prepetition Lender Group, the Trustee seeks authority upon Closing to pay the Purchase Price (less the Preston real estate commission and any contract adjustments with Olson or any substitute purchaser) directly to the Prepetition Lender Group as provided for in the Sale Approval Order.

17. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, Section 105(a) of the Bankruptcy Code allows

- 8 -

this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C § 105(a).

18. In addition, under Section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code"); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy … is that equitable principles govern") (citations omitted); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("The Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

19. Valid and sound business justifications exist for the proposed sale. As indicated above, the Trustee has determined that a sale as proposed herein is the most effective means to maximize the value of the Real Property.

20. The Trustee requests that the Court authorize the sale of the Real Property and the assignment of the Lease (if Olson or a substitute purchaser so elects) free and clear of all liens, claims, encumbrances and other interests (collectively, the "Encumbrances"), with such Encumbrances to attach to the proceeds of the sale, pursuant to Section 363(f) of the Bankruptcy Code, which provides as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  *See In re WBQ Partnership*, 189 B.R. at 105 (noting that Section 363(f) is written in the disjunctive and requires only one of the conditions present be met); *In re Collins*, 180 B.R. 447, 449-50 (Bankr. E.D. Va. 1995) (same); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).  *See also In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 93-94 (Bankr. E.D. Va. 1995) (Section 363 addresses sales free and clear of any interest, not just liens). Furthermore, Section 105(a) permits the Court to authorize the sale of a debtor's assets free and clear of any claims.  *See, e.g., In re White Motor Credit Corp.*, 75 B.R. 944, 948-49 (Bankr. N.D. Ohio 1987).

21. The Prepetition Lender Group consents to the Motion and to sale of the Real Property pursuant to the Agreement on the terms set forth therein subject to (i) preservation of its rights under Section 363(k) of the Bankruptcy Code; (ii) its right to receive the purchase price (subject to adjustments) in cash following the closing of the sale and (iii) the entry of the Sale Approval Order entered in form and substance acceptable to them.  The Trustee anticipates that the "consent" requirement of Section 363(f)(2) of the Bankruptcy Code will be satisfied.

22.   The proposed Sale Approval Order provides that all Encumbrances will attach to the proceeds from the sale of the Real Property in favor of the Prepetition Lender Group. Accordingly, the Trustee submits that the sale of the Real Property free and clear of any

- 10 -

Encumbrances satisfies the statutory prerequisites of Section 363(f) of the Bankruptcy Code.

23. The Trustee requests that the Court find that the Purchaser is entitled to the protections provided by Section 363(m) of the Bankruptcy Code in connection with the purchase of the Real Property.  Section 363(m) provides in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) … of this section of a sale … of property does not affect the validity of a sale … under such authorization to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).

24. Section 363(m) of the Bankruptcy Code protects the purchaser of property sold pursuant to Section 363 from the risk that it will lose its interest in the purchased property if the order allowing the sale is reversed on appeal.

25. As required by Section 363(m), the Trustee and the Purchaser have and/or will have acted in good faith in negotiating the proposed transaction.  Although the Bankruptcy Code does not define a "good faith purchaser", the Fourth Circuit, construing Section 363(m), has suggested that the phrase encompasses a purchaser who buys for value, in good faith and without notice of adverse claims.  *Willemain v. Kivitz*, 764 F.2d 1019, 1023-24 (4th Cir. 1985).  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

26. Finally, the Trustee requests that the Court order that the ten (10) day stay provided by Bankruptcy Rule 6004(g) not apply to the sale.  Under the circumstances, no purpose is served by any delay in the ability of the parties to consummate the closing.

- 11 -

## Assignment of Lease

27. The Agreement also provides that the Purchaser may elect to assume an assignment of the Lease with the Tenant.  The Lease, entered into post-petition with the Tenant, expires by its terms no later than April 30, 2010.

28. While the Trustee does not have rejection rights under Section 365 of the Bankruptcy Code as with a lease entered into pre-petition by any of the Debtors, pursuant to Section 363 of the Bankruptcy Code, the Trustee may assign its interest in the Lease.  Should the Purchaser decline to assume an assignment of the Lease, then the Purchaser has agreed to permit the Tenant to remain in occupancy for a 60 day time frame by which the Trustee can issue a termination notice to the Tenant so that the Lease shall terminate pursuant to its terms.

29. Finally, with respect to the Lease, to the extent of an assignment to Purchaser, the Trustee requests that the Court order the ten (10) day stay provided by Bankruptcy Rule 6004(g) and 6006(d), to the extent applicable, not apply to this transaction.  Under the circumstances, no purpose is served by any delay in the ability of the parties to consummate the closing.

## The Bid Procedures for an Auction are in
## The Best Interests of the Debtors

30. The Trustee believes that the bid procedures for an auction will assure the best and highest offer for the Real Property.  The proposed bid procedures will allow the Trustee to conduct an auction in a controlled, fair and open fashion that will encourage participation by any financially capable bidder who demonstrates the ability to close a transaction.  The Trustee believes that the bid procedures are sufficient to encourage bidding for the Real Property and appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.  Further, the bid procedures are designed to maximize value for the Real Property.

31. Once the Trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest believe that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to management decisions.").

32. Courts have made clear that a Trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Integrated Res.*, 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

33. The paramount goal in any proposed auction of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Res.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

34. To that end, courts uniformly recognize the procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate

- 13 -

and therefore are appropriate in the context of bankruptcy transactions. *See*, *e.g.*, *Integrated Res.*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets…[should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

35. As additional support, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As described above, approval of the bid procedures assists the Trustee in maximizing the value of the Real Property and is "appropriate" under the circumstance.

**A Breakup Fee for Olson is in the Best Interest of the Debtors**

36. To induce Olson to expend the time, energy and resources necessary to submit a stalking horse bid, through the Agreement, the Trustee has agreed to provide, and seek this Court's approval of bid protection in the form of, the Breakup Fee provided to Olson (with the consent of the Prepetition Lender Group ) under the Agreement.

37. The Trustee has agreed for Olson to receive $100,000 if the Real Property is sold pursuant to an Alternative Qualified Bid.

38. The Breakup Fee is a material inducement for, and a condition of, Olson's entry into the Agreement. The Trustee believes that the Breakup Fee is fair and reasonable in view of (a) the due diligence investigation, and negotiation undertaken by Olson in connection with the transaction and (b) the fact that, if the Breakup Fee is triggered, Olson's participation will have triggered the chances that the Trustee will receive the highest or otherwise best offer for the Real

- 14 -

Property, to the benefit of the Debtors and the Prepetition Lender Group.

39. Bidding incentives in favor a stalking horse are measured against a business judgment standard. *See In re O'Brien Envtl Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999). The *O'Brien* Court identified two instances in which such a benefit to the estate may be found. First, if the incentive promoted a more competitive bidding process, "such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." Second, where bidding incentives induce a bidder to research the value of the debtor and submit a bid that serves as the floor bid on which other bidders can rely.

40. The amount of the Breakup Fee in the Agreement is reasonable and appropriate in light of the size and nature of the transaction. Moreover, the Breakup Fee is consistent with the standard above; the Breakup Fee is a material consideration without which Olson would not have entered into the Agreement. Additionally, Olson required such Breakup Fee as inducement to proceed which establishes a competitive floor bid for sale of the Real Property.

41. The Trustee submits that the Breakup Fee is a normal, and oftentimes necessary component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr. S.D.N.Y. 1990) (approving an overbid requirement in an amount equal to the approved breakup fee).

42. The Trustee's ability to offer the Breakup Fee to Olson enables the Trustee to ensure the sale of the Real Property at a price believed to be fair while, at the same time, providing the Trustee with the potential of even greater benefit for the Debtors and the Prepetition Lender Group. Thus, the Breakup Fee should be approved.

**Conclusion**

43. In sum, the Trustee requests that this Court (i) approve the Agreement; (ii)

authorize the proposed bid procedures and (iii) enter the Sale Approval Order.  Subsequent to a sale pursuant to the Sale Approval Order, upon request by the Trustee, this Court, without notice, may provide a confirmatory order approving the sale to Olson or pursuant to an Alternative Qualified Bid as might be necessary for clarification to third parties.

WHEREFORE, for the foregoing reasons, the Trustee requests this Court enter the Sale Approval Order in the form submitted by the Trustee pursuant to 11 U.S.C. §§105 and 363:

A.      Authorizing the sale of the Real Property pursuant to the Agreement;

B.      Approving the Lease assignment under certain conditions at election of Purchaser;      C.      Approving bid procedures and sale pursuant to an Alternative Qualified Bid without further Court order; and

D.      Granting such other and further relief as this Court deems appropriate consistent with the Motion.

/s/  Mark J. Friedman
Mark J. Friedman (00102)
Susan S. Maher (06387)
David B. Misler (28828)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000

Attorneys for Mark J. Friedman, Chapter 7
Trustee for the Barton-Cotton Cases